**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **EDWARD TYRONE RIDLEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 5:22-cv-00159-TES-CHW** |
| | : | |
| **KARL FORT,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Before the Court is a motion for judgment on the pleadings filed by the Defendants. (Doc. 7). Because Plaintiff Edward Tyrone Ridley both fails to state a claim and failed to exhaust available administrative remedies prior to commencing this Section 1983 action, it is **RECOMMENDED** that the Defendants' motion be **GRANTED**. It is further **ORDERED**, for reasons discussed below, that Plaintiff's record related motions (Docs. 16, 21), as well as the Defendants' motion to strike (Doc. 23), are **DENIED**.

## BACKGROUND AND NON-DISPOSITIVE MOTIONS

This Section 1983 action arises from claims by Plaintiff that the Defendants, Georgia prison officers, violated Plaintiff's federal right to access the courts. Specifically, Plaintiff appears to allege that he lost a state-court case, *Ridley v. Casualty Insurance Co.*, in the Superior Court of Cobb County, Georgia, because mailroom staff at Washington State Prison changed the recipient information on Plaintiff's mailings, or alternatively because Plaintiff is subject to a correctional policy limiting him to five free stamps each week. (Compl., Doc. 1-1, pp. 6–7).

The Plaintiff in this action, Edward Ridley, is a "three-striker," meaning that at least three of Plaintiff's prior actions or appeals have been dismissed as frivolous, malicious, or for failure to

1

state a claim for relief, with the result that Plaintiff is now barred from proceeding *in forma pauperis* except in cases of imminent danger. 28 U.S.C. § 1915(g). The three-strike bar has no direct application in this removed action, but Ridley's prior abuse in past cases colors the review of his filings in this case.

One of those filings is an amended complaint, submitted without leave of court, which the Defendants have moved to strike. (Docs. 19, 23). As grounds to strike the filing, the Defendants cite (a) the fact that Plaintiff failed to file the complaint within the time period contemplated by Rule 15(a) of the Federal Rules of Civil Procedure and (b) the fact that Plaintiff did not seek leave of court to make the filing. *Cf. Cornelius v. Home Comings Fin. Network, Inc.*, 293 F. App'x 723, 728 (11th Cir. 2008). Because Plaintiff is proceeding *pro se*, and his filings are subject to a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and the better approach is to deem Plaintiff's filing as seeking leave of court. For that reason, the Defendants' motion to strike (Doc. 23) is denied.

Plaintiff's request to amend his complaint, however, is also denied. Insofar as Plaintiff seeks to expand the scope of his court access claims by adding new Defendants, his attempt to amend is futile because, as discussed in greater detail below, Plaintiff fails to state a claim for relief and failed to exhaust administrative remedies prior to bringing this action. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting "futility of amendment" as grounds for denial). Insofar as Plaintiff sought to add new, unrelated claims along with dozens of new defendants, this Court has "broad discretion to join parties or not." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). Plaintiff's proposed claims, which relate to the overflowing of his cell toilet and to alleged gang violence, are better raised in a different action. Moreover, Plaintiff's attempt to append those unrelated claims to this action is a likely attempt to circumvent the three-strike bar. *Cf. Brown v. Blaine*, 185 F.

2

App'x 166, 169 (3d Cir. 2006) ("Allowing Brown to allege unrelated claims against new defendants based on actions taken after the filing of the original complaint would defeat the purpose of the three strikes provision of the PLRA"). Accordingly, Plaintiff's deemed motion for leave to amend (Doc. 19) is denied.

Finally, in two motions Plaintiff seeks records from a different Middle District of Georgia action which is now closed (Doc. 16), and Plaintiff also seeks to submit grievance forms that post-date the commencement date of this action, *see McDaniel v. Crosby*, 194 F. App'x 610, 612–13 (11th Cir. 2006) (exhaustion to be completed at time of commencement), and that do not relate to Plaintiff's court-access claims. (Doc. 21). These motions by Plaintiff are denied.

## EXHAUSTION

As discussed below, the Defendants move for the resolution of this action based, in part, on Plaintiff's failure to exhaust available administrative remedies. Two standards bear upon the Court's analysis of exhaustion arguments. The first standard, set by the Eleventh Circuit's opinion in *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008), governs the Court's manner of review. The second standard, which is set by Georgia prison policy, sets the administrative remedies that prisoners must employ before commencing a Section 1983 lawsuit over prison conditions.

## A.   The *Turner* Standard

The Prison Litigation Reform Act or PLRA requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to

eliminate unwarranted federal-court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for courts to review motions to dismiss based upon a prisoner's failure to exhaust. A reviewing court first:

> [L]ooks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Turner*, 541 F.3d at 1082–83.

Second, if the complaint is not dismissed under step one, the court:

> [P]roceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion …. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.*

## B.   Grievance Procedure

The grievance procedure applicable in this case was set by Georgia Department of Corrections Standard Operating Procedure No. 227.02. Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within ten days of the grievable issue. (Doc. 7-2, p. 14). Prisoners may only litigate two grievances at a time. (Doc. 7-2, p. 12). Once filed, an original grievance is screened by prison staff, and it is either rejected outright or investigated. The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (Doc. 7-2, pp. 15–17).

On either the expiration of this response period or on the prisoner's receipt of a response, the prisoner must then proceed to step two by filing a "central office appeal" within seven days. (Doc. 7-2, p. 20). The grievance procedure then contemplates a 120-day period in which the Warden may provide a response. (Doc. 7-2, p. 21).

## JUDGMENT ON THE PLEADINGS

In their motion for judgment on the pleadings, the Defendants argue both that Plaintiff fails to state a claim for relief and that Plaintiff's claims should be dismissed for failure to exhaust.[1] The record supports both arguments.

Although Plaintiff seeks to advance a federal court-access claim, "the right of inmates' access to the courts" is limited to "to direct or collateral appeals and civil rights cases." *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). Even if the Court accepts Plaintiff's allegations of mail interference as true, therefore, and even if the Court is willing to entertain a challenge to the free stamp policy,[2] Plaintiff fails to demonstrate an actual injury as a matter of law. That is, because the offending stamp policy and alleged mail interference only obstructed Plaintiff's ability to litigate civil claims in *Ridley v. Casualty Insurance Co.*, in the Superior Court of Cobb County, Georgia, Plaintiff has alleged no cognizable actual injury that may give rise to a federal court access claim.

Additionally, the weight of evidence before the Court indicates that Plaintiff failed to exhaust available administrative remedies prior to commencing this Section 1983 action. The record shows that Plaintiff filed an original grievance requesting the "immediat[e] mail out [of] all

---

[1] The Defendants further note that Plaintiff's official capacity claims for damages fail, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), and that Plaintiff has alleged no physical injury entitling him to individual-capacity compensatory damages. 42 U.S.C. §1997e(e).

[2] *See Hoppins v. Wallace*, 751 F.2d 1161, 1162 (11th Cir. 1985) ("The constitutional right to access to the courts entitled indigent prisoners to some free stamps … but not unlimited free postage").

my indigent mail so I can meet my court deadlines." (Doc. 7-2, p. 31). This original grievance, no. 332449, referenced a limitation to "5 per week" indigent mailings. (*Id.*). The record indicates that Plaintiff also filed other grievances relating to his mail, but those other grievances specifically addressed the distinct issue of prison officials opening all mail, including legal mail, in front of inmates to detect contraband.[3] *See* (Doc. 7–2, p. 39) (grievance no. 333149). Hence, Grievance No. 332449 is the only grievance relevant to Plaintiff's court-access claims in this action.

At *Turner*'s first step of review, the Court must accept as true Plaintiff's allegations that the prison grievance system was not available to him because "prison officials refused to accept [grievance] documents." (Doc. 15, p. 7). Because these allegations suggest that some component of the grievance process was not available to Plaintiff, and because "[a] prisoner need not exhaust remedies if they are not 'available,'" *Ross v. Blake*, 578 U.S. 632, 635 (2016), a dismissal is not appropriate at *Turner*'s first step for failure to exhaust.

A dismissal is appropriate, instead, at *Turner*'s second step of review. Evidence submitted by the Defendants shows that Plaintiff had ample access to the grievance process, *see* (Doc. 7-2, pp. 27–28) (grievance history) and that Plaintiff voluntarily withdrew his Grievance No. 332449 in order to litigate other grievances in accordance with the two-grievance limitation. *See* (Doc. 7-2, p. 30) (signed grievance withdrawal form). This evidence discredits Plaintiff's account that he was unable to file and litigate a grievance regarding the alleged mail interference that underlies his court access claims in this action. Accordingly, and because the exhaustion of administrative remedies is "mandatory under the PLRA," *Ross*, 578 U.S. at 639, this action should alternatively be dismissed for failure to exhaust.

---

[3] The record indicates that this practice has since been amended and that staff at Washington State Prison now address mailings suspected of containing contraband on an individualized basis. *See* (Doc. 7-2, p. 34).

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that the Defendants' motion for judgment on the pleadings (Doc. 7) be **GRANTED**. It is further **ORDERED** that Plaintiff's record-related motions (Docs. 16, 21), along with the Defendants' motion to strike (Doc. 23), are **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 15th day of November, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge